UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | No. 6:24-cr-19-REW-HAI |
| | ) | |
| v. | ) | |
| | ) | OPINION & ORDER |
| RON WALTERS, | ) | |
| | ) | |
| Defendant. | ) | |

\*\*\* \*\*\* \*\*\* \*\*\*

Before the Court is Defendant Ron Walters's motion to suppress statements made to authorities following a purported invocation of his right to counsel under *Miranda*. *See* DE 31. The Government responded in opposition, *see* DE 36, and Witherspoon replied. *See* DE 38. On Walters's request, the Court held an evidentiary hearing. *See* DE 40. For the following reasons, and on consideration of the full record and the applicable law, the Court **DENIES** DE 31. Walters did not effectively invoke his right to counsel; suppression is not apt.

I. **Background**

The Government charges Ron Walters with one count of distribution of a visual depiction involving the use of a minor engaged in sexually explicit conduct, in violation of 18 U.S.C. § 2252(a)(2) and one count of possession of a matter containing a depiction of a minor engaged in sexually explicit conduct, in violation of 18 U.S.C. § 2252(a)(4)(B). *See* DE 9.

Relying on an informant's statement that Walters possessed "thousands" of Child Sexual Abuse Material ("CSAM") images, including images of children engaging in sex acts with other children, and on at least one occasion sent such images to the informant, authorities secured an arrest warrant for Walters and a search warrant for his cell phone. *See* DE 1 at 2–3; DE 31-1 at 2.

1

Authorities executed the warrant on March 2, 2024, arresting Walters at his residence and seizing his cell phone. *See* DE 31-1 at 2. The FBI transported Walters to its London, Kentucky office, for interrogation. *See id.*

Led by FBI Special Agent Cassandra McKenzie and Attorney General Detective Jonathan Eric Long, Walters underwent nearly an hour of questioning concerning the contents of his cell phone, the origin of the CSAM, and his role in distribution. This motion concerns the propriety of the custodial interrogation, specifically whether, post-*Miranda*, Walters invoked his right to counsel, an act that would have foreclosed the interview. The bulk of this motion concerns a single sentence uttered by Walters near the outset of the interview.

Walters was in custody and facing interrogation—no disputes about those markers. Before wading in, Agent McKenzie compliantly advised Walters of his *Miranda* rights, including the right to remain silent, the right to consult counsel before questioning, the right to have counsel present before or at any time during the questioning, the right to indigent representation in the event Walters could not afford counsel, and the right to stop questioning at any time. *See* Hrg. Exhibit 1 at 9:04:23–53.[1] Just after Agent McKenzie concluded her recitation of the *Miranda* rights, Walters immediately responded "yah, I ain't got no problem with that." *Id.* at 9:04:53–54. McKenzie asked in response, "so, you understand all that?" *Id.* at 9:04:55–56. Then, Walters responded, "I mean, all I have to do is make a phone call, I got a lawyer, it's no big deal." *Id.* at 9:04:57–59. McKenzie then advised that if Walters still wished to proceed after the warning, he should sign the Advice of Rights form, which he could "read over again" if he wished. *See id.* at 9:05:00–12. Walters

---

[1] Exhibit 1 is a video recording of the interrogation captured by the Government and submitted as evidence at the suppression hearing. The Court's citations to Exhibit 1 correspond to the original video timestamp laid over the video adjacent to the date at the time the operative statement occurred. At the hearing, the parties mostly referenced the player counter, but to prevent any confusion, the original seems the better reference. Oddly, the video's vantage point, from the video played in court to the exhibit, differed, but the captured event and audio seem to be identical.

promptly signed the form, *see* DE 31-2, seemingly without reading it in full a second time. *See* Exhibit 1 at 9:05:12. Around 30 seconds later, Det. Long interjected for the first time, confirming that "you're agreeing to talk to us without a lawyer," *see id.* at 9:05:40, to which Walters nodded without hesitation and stated "Yeah, I'm ok, I'm good with it, I ain't got nothing to hide." *Id.* at 9:05:45.

Over the next 55 minutes of questioning, Walters made numerous likely inculpatory statements and admissions. At the conclusion, authorities reiterated that Walters was under arrest, he would see a judge and would be appointed an attorney. *See id.* at 12:51–52. Walters responded, "I've got an attorney," but was "not sure if he is a criminal attorney." *See id.* at 12:52–53. McKenzie then led Walters out in handcuffs, concluding the video.

Following discovery, Walters filed the present motion to suppress the statements he made in this interrogation and any evidence derived from such statements, arguing that he invoked his right to counsel at the outset of the interrogation in stating, "I mean, all I have to do is make a phone call, I got a lawyer, it's no big deal." *See* DE 31-1 at 5. The Government responded in opposition to Walters, *see* DE 34, who then replied. *See* DE 38. The Court held a suppression hearing, considering arguments from the Government and Walters, after testimony from Agent McKenzie and Det. Long. *See* DE 40. The matter, which turns solely on invocation vel non, is now ripe for ruling.

## II. Legal Standard

The Fifth Amendment to the U.S. Constitution guarantees that "no person…shall be compelled in any criminal case to be a witness against himself." U.S. Const. amend. V. While the Amendment does not entail an express right to counsel, the Supreme Court has long read the protection to include an implied right to counsel in certain pretrial settings—namely, custodial

3

interrogation. *See Miranda v. Arizona*, 86 S. Ct. 1602, 1625–26 (1966); *Abela v. Martin*, 380 F.3d 915, 925 (6th Cir. 2004), *abrogated on other grounds by Guilmette v. Howes*, 624 F.3d 286 (6th Cir. 2010).

In a custodial setting, following proper administration of a suspect's *Miranda* warnings and a voluntary and intelligent waiver of those rights, questioning may proceed without counsel unless and until the individual communicates a desire "to deal with the police only through counsel." *Edwards v. Arizona*, 101 S. Ct. 1880, 1885 (1981). At that point, authorities must "cease" all questioning until the suspect accesses counsel or comes back to the table on their own accord. *See Smith v. Illinois*, 105 S. Ct. 490, 494 (1984); *see also Maryland v. Shatzer*, 130 S. Ct. 1213, 1219 (2010). The Government must demonstrate a proper waiver of the right to counsel, *see Seymour v. Walker*, 224 F.3d 542, 554 (6th Cir. 2000), and if it fails in that showing, evidence collected post-invocation must be excluded from the prosecution's case in chief, absent some exception. *See Miranda*, 86 S. Ct. at 1638; *United States v. Potter*, 927 F.3d 446, 450 (6th Cir. 2019). Here, the defense concedes warning propriety, and there is no issue on involuntariness.[2] The key is the defense contention that Walters properly invoked the right to counsel in response to the *Miranda* recitation. A proper invocation, in this context, would have ended sanctioned interrogation and thus would foreclose use of Walters's post-invocation answers.

Not any statement will do, however. Invoking the right to counsel requires, at a minimum, a statement that can "reasonably be construed to be an expression of a desire for the assistance of an attorney." *Davis v. United States*, 114 S. Ct. 2350, 2355 (1994). If the statement is "ambiguous or equivocal," such that a reasonable officer would have only understood that the suspect "*might*"

---

[2] A suspect may waive [*Miranda*] protection[s], including in a pretrial interrogation, if, in light of the totality of the circumstances, he does so "voluntarily, knowingly and intelligently." *Miranda*, 86 S. Ct. at 1602. A waiver is voluntary where the suspect's decision to talk is "the product of a free and deliberate choice rather than intimidation, coercion, or deception." *Wesson v. Shoop*, 17 F.4th 700, 704 (6th Cir. 2021).

be invoking the right to counsel, questioning may proceed.[3] *See id.* (emphasis original) (citing *Edwards*, 101 S. Ct. at 1885 (requiring a "clear[] assert[ion]" of the right to counsel)). At bottom, when a suspect invokes the right to counsel, the suspect must do so "unambiguously." *Berghuis v. Thompkins*, 130 S. Ct. 2250, 2259 (2010); *see also Abela*, 380 F.3d at 925 ("To trigger the *Edwards* rule, the suspect's invocation of the right to counsel must be clear and unambiguous.").

Plainly, "a statement either is such an assertion of the right to counsel or it is not." *Davis*, 114 S. Ct. at 2355. That standard sets a "high bar" to trigger *Edwards* protection, *Potter*, 927 F.3d at 450, and calls for a "firm request" lacking "any ambivalent adverbs." *Id.* at 451. Courts examine the inquiry with an objective lens to "avoid difficulties of proof and to provide guidance to officers conducting interrogations." *Davis*, 115 S. Ct. at 2355. Thus, "the *likelihood* that a suspect would wish counsel to be present" is irrelevant, given that *Edwards* applies "only when the suspect has *expressed* his wish for the particular sort of lawyerly assistance" covered by *Miranda*. *McNeil v. Wisconsin*, 111 S. Ct. 2204, 2209 (1991) (emphasis original) (internal quotations omitted).

Importantly, the temporal space comprising the inquiry is narrow. "Any ambiguity must come from the statement itself or what led to the statement." *See United States v. Zakhari*, 85 F.4th

---

[3] There could be tension in squaring the "reasonable officer" standard with the "clear and unambiguous" qualification. That would be true if the measure meant that *a* "reasonable officer" *could* instead of *every* such officer *would* view the suspect's words as an invocation. However, the courts solve this through the requirement of clarity and unambiguousness. *See* George M. Dery III, *Do You Believe in* Miranda*? The Supreme Court Reveals Its Doubts in* Berghuis v. Thompkins *by Paradoxically Ruling That Suspects Can Only Invoke Their Right to Remain Silent by Speaking*, 21 GEO. MASON U. CIV. RTS. L.J. 407, 424 (2011) (pointing to factors in invocation that could lead a reasonable officer to different conclusions). Must authorities stop questioning in debatable circumstances? The answer is "no" under *Davis*, in that if a reasonable officer could have gone either way, the statement falls short. *See Davis*, 114 S. Ct. at 2355 (if a statement "might" have been an invocation, questioning need not stop). By definition, a statement is ambiguous or equivocal if it reasonably could mean different things or be interpreted differently. *Ambiguous*, *Black's Law Dictionary* (12th ed. 2024) ("open to more than one plausible interpretation" or "possibly leading to more than one reasonable conclusion"). If the scenario is one that a reasonable officer could view as not invoking (even against contrary plausible views), then the required clarity is absent. *See e.g., Abela*, 380 F.3d at 925 (describing the primary inquiry as whether the invocation was clear and unambiguous); *Scott*, 927 F.3d at 450 (describing the invocation standard as "bright line" and stating that "ambiguous or equivocal" statements do not put a reasonable officer on notice concerning invocation).

367, 375 (6th Cir. 2023). Training the Court's eye in this manner avoids the "intolerable" approach of using a suspect's "subsequent responses to cast doubt upon the adequacy of the initial request." *See id.* (citing *Smith*, 105 S. Ct. at 490). If the rule were otherwise, the interrogator could proceed despite the invocation in hopes that the suspect "might be induced to say something casting retrospective" doubt on the initial request. *See Smith*, 105 S. Ct. at 490.

In a word, proper invocation requires a clear and unambiguous assertion of the right to counsel, looking only to the statement itself and to the circumstances directly preceding the purportedly invocative statement.

### III. Analysis

The central issue in resolving Walters's suppression motion is determining whether the statement, "I mean, all I have to do is make a phone call, I got a lawyer, it's no big deal," amounts to a clear and unambiguous invocation of the right to counsel. Because it does not, the Court finds the Government's burden satisfied and **DENIES** Walters's motion.

Chiefly fatal is that the statement, objectively assessed, amounts to a conditional reference rather than a request. Walters stated only that "I got an attorney" and that the attorney could be reached through a mere phone call. Read together, those two phrases lack the active nature of invocation. Walters "never requested to actually have" that attorney present and "never once said that he wanted to stop the interview to wait for one"—both missing features that lead to an equivocal and ambiguous invocation. *See Potter*, 927 F.3d at 451. As Sixth Circuit precedent makes clear, "the mere mention of an attorney does not cut it," nor does "a question about having an attorney." *Id.* (citing *Davis*, 114 S. Ct. at 2356). Rather, *Edwards* typically requires something *active*: a request, expression of desire, directive, or the like. *See Davis*, 114 S. Ct. at 2355 (describing proper invocation, at various points, with active verbs). Mere reference to an attorney,

absent the active ingredient of invoking presence or consultation, fails to clear *Edwards*'s high hurdle.

The context surrounding Walters's statement supports this reading. While "language that might be less than clear, when viewed in isolation, can become clear and unambiguous when the immediately surrounding circumstances render them so," *Abela*, 380 F.3d at 926, the inverse holds true here. Seconds prior to Walters's statement, Agent McKenzie had just finished reading the *Miranda* rights, concluding with the portion addressing Walters's right to indigent representation and the right to cease questioning at any time. *See* Exhibit 1 at 9:04:52. Walters responded to her recitation, "yah, I ain't got no problem with that," *id.* at 9:04:53–54, when Agent McKenzie then asked whether Walters understood those rights. *Id.* at 9:04:55. It was then that Walters stated, in direct response to Agent McKenzie's second inquiry, "I mean, all I have to do is make a phone call, I got a lawyer, it's no big deal." *Id.* at 9:04:57–59.

Placed in context, Walters's statement reasonably seems less like an invocation, and more like an answer. The statement did reference the capability of reaching an attorney, but a reasonable officer could treat the remark as simply affirming that Walters understood the *Miranda* rights just recited to him, including specifically the right to appointed counsel. Walters, thus, was confirming that he understood he could have an appointed attorney, but he was communicating no need for that accommodation. The testimony of the interrogating authorities confirmed that contemporaneous view. At the suppression hearing, the Government called Special Agent McKenzie, and Walters called Det. Long. *See* DE 39. Having both been present in the room when Walters made the statement, McKenzie and Long each testified that they understood Walters's statement as affirming understanding of the *Miranda* rights just read to him, rather than invoking his right to counsel. Both McKenzie and Long also stated that, had they believed Walters's

7

statement to be an invocation, they would have immediately ended the interview in compliance with the law and their training.

The Court reads Defendant's statement—taking into account tone, verbiage, and the prefatory context—as plausibly confirming that Walters did not need appointed counsel and that he could easily reach a lawyer if he needed to do so. Part of *Miranda*'s litany informs the subject of the right to secure a lawyer, and part informs of the right to involve a lawyer in the questioning. Walters, in a reasonable interpretation, was saying that he had access to counsel, reachable easily if needed, should he elect to utilize that access. At the most, Walters "*might*" have been invoking his right to counsel; the objective inquiry—assessed through the lens of a reasonable officer—fails to establish an unambiguous and unequivocal request. *See Davis*, 114 S. Ct. at 2355.

Walters relies heavily on the Sixth Circuit's decision in *Zakhari*, 85 F.4th at 373–74, citing it as his "best case" on the Court's inquiry at the suppression hearing. But *Zakhari* is easily distinguishable. There, the Sixth Circuit found an unambiguous invocation of the right to counsel after a suspect responded, "Yeah, I mean sh—," to a detective's question whether the suspect wanted to call his sister, whom officers knew to be an attorney. *See id.* The Court found that Zakhari had "lawyerly assistance in mind" in identifying his sister as an attorney and responding decisively that he'd like to call her. *See id.* at 376–77. The Court overlooked the trail end of the sentence, "I mean sh—," finding that the added words, even if ambiguous in isolation, did not "contradict the affirmative response given" or alter the underlying import of his earlier communication: "that he wanted to stop and make a call." *See id.* at 377. Officer reactions, at the time, strongly bolstered the take.

Walters's statement lacks the same clarity. While Walters identified a relationship between himself and some lawyer, he never stated, expressly or impliedly, his wish to consult, to have that

8

lawyer present during the interview, or to end the interview and contact the lawyer. His statement was entirely conditional—that he had a lawyer and *could* contact the lawyer with just a call, if he pleased. *Cf. Moore v. Berghuis*, 700 F.3d 882, 887 (6th Cir. 2012) (finding proper invocation where suspect directed police to "call his attorney's phone number").

Walters relatedly argues that, like suspect Zakhari, he had "lawyerly assistance" on his mind in making the statement. *See* DE 31-1 at 5. That argument twice fails. First, as previously discussed, the Court sees only a blurry picture concerning whether Walters was truly interested in legal assistance or was merely affirming that he understood his *Miranda* rights. But even if Walters did have "lawyerly assistance" in mind, the intent does not become operative under *Edwards* until Walters unequivocally invokes, expressing it with a clarity no reasonable officer could miss. *See Edwards*, 101 S. Ct. at 1885. An inscrutable or debatable reference to an extant attorney is not on the invocation side of *Davis*'s bright line.

*Abela*, 380 F.3d at 915, despite Walters's assertions to the contrary, is similarly inapposite. There, the Sixth Circuit found a suspect's statement, "maybe I should talk to an attorney by the name of William Evans," clear and unambiguous when *combined* with the suspect's handing over a business card for the attorney to the questioning officer. *See id.* at 926. Walters reasons that, "[l]ike the purported invocation of *Abela*, [he] referenced a specific attorney as his attorney, although not by name." *See* DE 31-1 at 6. But *Abela*'s finding of an invocation did not depend on the statement, but rather more precisely, on the "circumstances surrounding" the statement, including the suspect handing the officer the attorney's business card and the officer agreeing to call the attorney on the suspect's behalf. *See Abela*, 380 F.3d at 926. Indeed, as the Sixth Circuit recognized in later applying *Abela*, the suspect's added conduct, not the statement itself, turned "what would have otherwise been an equivocal request into an unambiguous one." *Potter*, 927

9

F.3d at 451. Quite unlike *Abela*, Walters informed officers that he had an attorney who he could call—nothing further. He did not identify the attorney by name, did not hand over a business card or other contact information, and did not hear his interrogators agree that they would contact the attorney on his behalf. Because Abela's statement, absent the additional conduct, would have amounted to an "equivocal request," *see Potter*, 927 F.3d at 451, nothing justifies a contrary conclusion here.

Finally, each of the other comparative cases Walters cites involves a much clearer and more definitive request than Walters's statement. He begins with the Supreme Court's holdings in *Edwards* and *Smith*, which addressed, respectively, the statements "I want an attorney before making a deal" and "Uh, yeah, I'd like to do that" in response to whether the suspect would like an attorney present. *Edwards*, 101 S. Ct. at 1882; *Smith*, 105 S. Ct. at 493. These statements, unlike Walters's, left the interrogating authorities with the clear and definite impression that the suspects did not wish to proceed further without counsel. Similar clarity evades Walters's statement. He continues with two out of circuit cases, both turning on suspect statements that they "should" call a lawyer. *See Cannady v. Dugger*, 931 F.2d 752, 755 (11th Cir. 1991) ("I think I should call my lawyer."); *Wood v. Ercole*, 644 F.3d 83, 87 (2d Cir. 2011) ("I think I should get a lawyer."). These statements feature a differentiating characteristic from Walters's statement—namely, the present intention to contact counsel, which Walters's statement lacked. Unlike *Cannady* and *Wood*, Walters did not contemplate contacting his attorney in the present moment; he stated only that he had a relationship with an attorney, who he could presumably contact if he wished. That conditional phrasing stands in stark contrast to the active language present in both referenced invocations.[4] Walters's careful treatment of comparative precedent does not alter his result.

---

[4] The Court considered, but will not discuss, the other duplicative cases Walters cited.

Walters sought to stake out his own bright line—that saying "I have a lawyer" in and of itself is an invocation as a matter of law. The Court is not persuaded, and Walters had no case establishing that line. Instead, the question is how a reasonable officer would view the suspect's expression. Noting a relationship with counsel is, here at least, short of invoking the right to consult or have counsel present for questioning. It does not take an Oxford Don to make the simple, additional linkage from having to involving counsel: stop and call my lawyer. *See Davis*, 114 S. Ct. at 2355. Walters did not, at any point, notify the officers that he wanted to involve the easily reached lawyer before proceeding on.

Lastly, a word about law enforcement conduct. Here, the officers faced ambiguity. Walters waived and then confirmed that he had a lawyer he could reach easily. That was short of invoking but wandered into the territory. Thus, Det. Long immediately queried Walters's intent—was he in fact agreeing to speak without counsel? This was proper and laudable. Long was not trying to erode or badger through an invocation; he was instead trying to clarify an ambiguity. This is a "good police practice" to be encouraged. *See id.* at 2356. Trying to overcome a suspect that has invoked is forbidden, but seeking clarity from an equivocating suspect is a step of benefit to the suspect and the rule of law. That is what Det. Long did in this interrogation.

## IV. Conclusion

For the stated reasons, the Court **DENIES** DE 31.

This the 12th day of November, 2024.

Signed By:
*Robert E. Wier* REW
United States District Judge